# FOREWORD

The antitrust statutes provide a number of simple principles establishing competition as the guiding means for organizing the United States economy. Reading these statutes alone, however, provides little guidance as to conduct that the law forbids. We know, for example, that any agreements "in restraint of trade" are unlawful, as are all actions that "monopolize" or "attempt to monopolize" "any part" of interstate commerce. But what do these phrases mean? The broad precepts the statutes establish are given content only by analyzing a vast array of court decisions, enforcement actions, agency regulations, and guidelines that have accumulated over more than 120 years. The mission of *Antitrust Law Developments* has been to synthesize these materials into a coherent—and objective—statement of the governing legal rules for the benefit of the bar, the judiciary, and students of the law.

This is the seventh edition of *Antitrust Law Developments.* The series originated in 1968 as a commentary by the American Bar Association's Section of Antitrust Law on the *Report of the Attorney General's National Committee to Study the Antitrust Laws,* which had been published in 1955. This commentary, entitled *Antitrust Developments 1955-68,* updated the 1955 Report with case and agency developments through the intervening thirteen years. The first volume to bear the title *Antitrust Law Developments* was published in 1975 under the leadership of Harvey M. Applebaum (Editorial Chair) and Irving Scher (Vice Chair). Its purpose, as confirmed by the foreword, was "to state as objectively as possible the current state of the law and developments in the antitrust field."

The more recent editions of *Antitrust Law Developments* have shared that goal: *Antitrust Law Developments (Second)*, published in 1984 under the leadership of James R. Loftis, III (Editorial Chair) and Michael L. Denger (Vice Chair); the third edition, published in 1992 under the guidance of Willard K. Tom (Editorial Chair) and Abbott B. Lipsky, Jr. (Vice Chair); the fourth edition, published in 1997, which was led by Joseph Angland (Editorial Chair) and Theodore Voorhees (Vice Chair); the fifth edition, published in 2002, for which Debra J. Pearlstein was Editorial Chair; and the sixth edition, published in 2007 under the leadership of Jonathan M. Jacobson. Much of the extensive research, writing, and analysis of those prior editions continues to be reflected in this seventh edition of the treatise.

For this seventh edition, the Section is indebted to a highly qualified and dedicated Editorial Board for its exhaustive work in editing, supervising, reviewing, and drafting the treatise's text and extensive footnotes. The Editorial Board consisted of Jonathan I. Gleklen, Chair, and board members Thomas P. Brown, Ankur Kapoor, John M. Majoras, Scott Martin, George A. Nicoud III, Deborah Salzberger, and Koren W. Wong-Ervin. The Editorial Board also received substantial assistance in editing from Larissa C. Bergin. Publications Officer Jonathan M. Jacobson provided invaluable assistance, as did the Section's Council members and officers, who carefully reviewed and commented on each chapter before approving the treatise for publication. In addition, the Editorial Board received particular assistance in drafting and editing from members of the Section's Books and Treatises Committee. Members of the Corporate Counseling Committee,

under the direction of Committee Co-Chair Eric Stock, prepared the new Index of Common Counseling Issues.

Like its predecessors, this new treatise is the work of hundreds of members of the Section. It is not possible to name them all here. The Section does, however, gratefully acknowledge the contribution of the following:

*Contributors*

Rachel J. Adcox
Helder Agostinho
Isabel Alves
Katherine A. Ambrogi
Darryl W. Anderson
Elizabeth C. Arens
Norman Armstrong, Jr.
David E. Azar
Peter Barile
Belinda Barnett
Daniel R. Barney
Karen L. Berenthal
Andrew C. Bernasconi
Zachary W. Biesanz
Angela M. Bish
Barbara Blank
Edward J.W. Blatnik
John H. Bogart
Margaret Branick-Abilla
Paul J. Bratter
Katherine Britton
Christina J. Brown
Paul J. Brown
Vadim Brusser
James M. Burns
Deana L. Cairo
James Calder
John Carroll
Winston Y. Chan
Andrew H. Chrestman
Bart D. Cohen
Thomas J. Collin
Ian Conner
Robin Cook
Anne Marie Cushmac
Hayane C. Dahmen
Ausra Deluard
Ross A. Demain
James A. Donahue III
James Donato
Kenneth W. Donnelly
Dimitri Dubé
J. Brady Dugan
Lisl Dunlop
Benjamin R. Dryden
Courtney B. Dyer
John Elliott
Steven A. Ellis
Eric P. Enson
David R. Esquivel
Jason D. Evans
Craig Falls
Jeremy D. Feinstein
Kenneth W. Field
Stacy Frazier
Robert E. Freitas
Wendy Fu
Richard Fueyo
Bryan D. Gant
Jacob Gardener
Gregory M. Garrett
Lindsey Gauthier
Jonathan Gimblett
Kevin B. Goldstein
James M. Griffin
Brian K. Grube
Kevin Hahm
Matthew C. Hammond
Matthew C. Hans
Adam C. Hemlock
Jonathan Herczeg
Joshua D. N. Hess
James R.P. Hileman
Carla A. R. Hine
Frank Hinman
Eric S. Hochstadt
Edward K. Holman
Christine A. Hopkinson
Peter K. Huston
Leslie Sara Hyman
Charles Garner Jarboe
James K. Kaleigh

Krisztian Katona
Elai Katz
Karen Kazmerzak
Finnuala M. Kelleher
Consuelo A. Kendall
Ihan Kim
Samantha H. Knox
Catherine Y. Koh
Mihir Kshirsagar
Jonathan R. Lahn
Brent W. Landau
Marc S. Lanoue
Anne Lee
Sarah B. Lee
Jay L. Levine
Mark Levy
Sophie Lignier
Paula Garrett Lin
John Longstreth
Derek Ludwin
Catherine Y. Lui
Gregory P. Luib
Jonathan R. Lutinski
Martin J. Mackowski
Michael A. Mahone, Jr.
Charles Malaise
William M. Martin
Mary Anne Mason
Daniel Matheson
Brian K. McCalmon
Mollie McGowan
Alexander M. McIntyre, Jr.
Adam Mehes
Brian R. Meiners
Jack Metzler
Craig Minerva
Adam Mintz
J. Benjamin Mitchell
Dukki Moon
Peter E. Moran
Jeremy Morrison
M. Howard Morse
Peter J. Mucchetti
Stephen P. Murphy
James H. Mutchnik
Emily B. Myers
Justin Solomon Nematzadeh
Danica Noble
Alexander Paul Okuliar

Jack E. Pace III
Lauren A. Perotti
Jeffrey H. Perry
Daniel J. Pirolo
Leah E. Pogoriler
Brent F. Powell
Richard A. Powers
Bethel M. Quander
Mark A. Racanelli
Naveen Rao
Neil Ray
Sarah M. Ray
Bradley Reynolds
John Roberti
Stephen W. Rodger
Michael L. Rosenthal
Kajetan S. Rozga
Alan Rutenberg
Bilal Sayyed
Fiona A. Schaeffer
Jeffrey Schmidt
Deena Jo Schneider
Jennifer K. Schwab
Edward B. Schwartz
Anthony D. Scicchitano
Kimberly L. Scott
Gregory M. Sergi
Maggie Sklar
Jesse Solomon
Caitlin Somerman
Jay P. Srinivasan
David J. Stanoch
Anthony Swisher
Matthew Tabas
Finnuala K. Tessier
Ryan C. Thomas
Jennifer Thomson
Forrest W. Treat
Darren S. Tucker
Douglas Tween
Amanda L. Wait
Ryan Z. Watts
Claire Webb
James L. Weis
Tracy W. Wertz
Scott Westrich
Jeff White
Nora Whitehead
Ronald F. Wick

Benjamin D. Williams
W. Lindsey Wilson
Tracy Wirtz
Stelios S. Xenakis
Robert Yezerski
Bryant S. York
Daniel K. Zach
David Alan Zetoony

The Section also recognizes the contributions to the treatise of Deborah Bellinger, Heidi Cofsky, Rodney Ellis, Holly Fisher, Mariko Gjovig, Virginia Guerrero, Daniel Horne, Isabelle James, Patricia Maxwell, George Perez, Solon Phillips, Patricia Skinner, and Suzanne Smith—who collectively checked each of the many thousands of citations in the treatise. The Section also specially appreciates the assistance of attorneys in Arnold & Porter's antitrust group who proofed the text and of Deborah Morman of Arnold & Porter who word processed the text and provided key quality control.

The predecessors of this treatise have been widely regarded as the most comprehensive and accurate one- and two-volume treatments of the United States antitrust laws, and have been cited with increasing frequency by courts (including the Supreme Court), in briefs, and in the legal and economic literature. The respect these volumes have earned is attributable to many factors. Perhaps the most important is the dispassionate and objective recitation of the law that *Antitrust Law Developments* provides, the product of an extensive volunteer effort by so many talented individuals. The seventh edition strives to continue this distinguished tradition.

April 2012

Richard M. Steuer
*Chair, 2011-12*
Section of Antitrust Law
American Bar Association

use are injured in their property within the meaning of Section 4.[42] Interference with a valid contract is also an actionable injury.[43] But the property requirement is not met when the plaintiff has no legal right to receive the benefit it allegedly lost due to the defendant's conduct[44] or when a state or other governmental agency claims injury to its general economy.[45]

## *2. Injury-in-Fact*

Proof of an antitrust violation alone is not enough to recover damages under Section 4.[46] A plaintiff must establish the existence of "injury" to itself, also referred to as "impact" or "fact of damage."[47] While a somewhat relaxed standard applies to

---

42. *Id.* at 342; *see also In re* Pharm. Indus. Average Wholesale Price Litig., 582 F.3d 156, 190 (1st Cir. 2009) (overpayment is a cognizable form of injury), *cert. denied*¸131 S. Ct. 60 (2010).

43. *See, e.g.*, *Hecht*, 570 F.2d at 994-95; N. Tex. Producers Ass'n v. Young, 308 F.2d 235, 243 (5th Cir. 1962); Fishman v. Estate of Wirtz, 1981 U.S. Dist. LEXIS 9998, at *69 (N.D. Ill. 1981), *aff'd*, 807 F.2d 520 (7th Cir. 1986). *But see* VTR, Inc. v. Goodyear Tire & Rubber Co., 303 F. Supp. 773, 783-84 (S.D.N.Y. 1969) (property requirement not met by contract right to receive commissions from business where owner of business had no obligation to continue to operate it).

44. *See, e.g.*, RSA Media v. AK Media Grp., 260 F.3d 10, 15 (1st Cir. 2001) (plaintiff lacked antitrust standing because regulatory scheme, not defendant's conduct, prevented it from erecting new billboards); Schuylkill Energy Res. v. Pa. Power & Light Co., 113 F.3d 405, 418 (3d Cir. 1997) (party legally barred from competing against public utility lacked standing); Bubis v. Blanton, 885 F.2d 317, 319-20 (6th Cir. 1989) (plaintiff charging unlawful failure to grant transfer of retail liquor license lacked required business or property interest because of failure to comply with disclosure requirements under state licensing statute); *see also* Berlyn, Inc. v. Gazette Newspapers, 157 F. Supp. 2d 609, 619 (D. Md. 2001) (allegations that conspiracy in newspaper industry "stilled independent editorial voices and reduced the presentation and discussion of diverse viewpoints . . . [did] not present a cognizable injury to business or property, as required by Section 4 of the Clayton Act").

45. *See* Hawaii v. Standard Oil Co., 405 U.S. 251, 264 (1972); *see also* City of Rohnert Park v. Harris, 601 F.2d 1040, 1043-44 (9th Cir. 1979) (municipality had no proprietary interest to protect from alleged monopolization of retail space in local area).

46. *See* J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 562 (1981); *accord* Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 486 (1977) ("to recover damages [plaintiffs] must prove more than that [defendant] violated § 7 [of the Clayton Act], since such proof establishes only that injury may result"); Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1273-76 (3d Cir. 1995) (vacating damage award upon finding that expert failed to link any decline in distributor's sales to defendant manufacturer's price discrimination); Local Beauty Supply v. Lamaur Inc., 787 F.2d 1197, 1200 (7th Cir. 1986) (plaintiff must prove more than antitrust violation to prevail; plaintiff must prove causation, i.e., injury "by reason of the antitrust violation").

47. *See, e.g.*, Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563 (1931). Many antitrust claims have failed when the plaintiff failed to establish injury or fact of damage. *See, e.g.*, Davric Maine Corp. v. Rancourt, 216 F.3d 143, 149 (1st Cir. 2000) (no injury where defendant's "planned attempt to force a foreclosure [on plaintiff's mortgage] failed" and plaintiff "submitted no evidence of any actual foreclosure"); Simmons v. Unocal Corp., 1999 U.S. App. LEXIS 9804, at *6-7 (9th Cir. 1999) ("The suggestion that Union Oil's withdrawal from the market and sale of its marketing assets to Tosco . . . is somehow an antitrust injury because the Simmons Group members did not get to engage in individual purchase transactions for their individual premises is unfounded. For example, there is not the slightest hint that Union Oil would have otherwise sold off its roughly $2,000,000,000 going concern in bits and pieces if it had not sold to Tosco, and that some benefit would thereby have been conferred on the group members."); Precision Assocs. v. Panalpina World Transp., 2011 U.S. Dist. LEXIS 51330, at *38-40 (E.D.N.Y. 2011) (no allegation that inflated freight surcharges resulting from alleged conspiracy were paid by plaintiffs).